Hamilton was arrested on a complaint filed by a private individual. That complainant was the daughter of the municipal court clerk in which the charge was filed. He was arrested by David Inman, who happened to be the boyfriend of the complainant. He was arrested through the assistance of a local law enforcement agency in an adjoining town. Ms. Inman, in her brief, acknowledges that that individual was attempting to stop Mr. Hamilton outside the city limits on a warrant issued by the City of Hayti. In fact, no warrant had been issued and no warrant was issued for some time after that. The individual, the officer in the adjoining town, turned Mr. Hamilton over to police officers for the City of Hayti. That is, Mr. David Inman, the boyfriend of the complaining party. He was taken to the county jail and booked and held in custody on behalf of the City of Hayti. The City of Hayti pays for the costs of detention of individuals in the county jail during the time they are there. The police department, including the city marshal, have actual responsibility for that individual and can remove them, can release them at any time. What is unique in this case is that in Stump v. Sparkman, the court noted that its unusual judicial immunity is kind of a recurring problem. Many times we run into situations with lay judges or other judges. As in any profession, sometimes you have judges who are not up to par. We believe that's the kind of case that we have here. But doesn't judicial immunity protect judges who aren't up to par? I mean, that's not the standard, is it? It protects them provided they are making reasoned decisions in the cases. When they don't have jurisdiction over a case, they have no authority to act or do anything else. Our position in this case is that Judge Ragland forfeited any kind of immunity that he had because he had no jurisdiction. It's just the same as a judge walks out on the street and tells a policeman, arrest that person. He has no jurisdiction to do that. That's exactly what happened in this case. He had no jurisdiction. So if a district judge in St. Louis accepts a diversity case and over-allegations that there is no diversity and proceeds to grant summary judgment for one party or the other and it goes to the U.S. Supreme Court, says there was no diversity jurisdiction, that district judge is liable for damages to the... Well, perhaps not completely. In that particular case, you would have... Not at all. That's not even arguable. No, I don't think, Your Honor, that... So jurisdiction has so many meanings that it's a word that almost should be banned in oral argument. It's true, Your Honor. Acting completely without jurisdiction. Why don't you stick with the microphone so we can hear you? I suppose if a U.S. judge declares that someone is guilty of a crime in Estonia, that starts to look like complete absence of jurisdiction. But that isn't anywhere... This isn't anywhere near that. That's one of the things that I think is so important in this case is the Supreme Court, Stump v. Sparkman in particular, points out that really what's important is that you have a case before you. A judge, like I say, cannot walk out on the street out here and say, I don't think that guy is doing what he ought to, arrest him. No jurisdiction. So a judge who accepts, who says, decides, a trial judge who decides there's a case for controversy and gets reversed by the Eighth Circuit or the Supreme Court is liable in damages... No, he doesn't lose his jurisdiction on that. Pardon? He does not lose his jurisdiction on that. In a case such as that... As to Judge Ragland... Well, as to Judge Ragland... I think you're going nowhere, frankly. I don't... The jurisdiction... Well, I think... As to the judge, it is... Well, you can start there, but I don't see it... One of the things that's consistent in every case that's come up is that there is a proper case before the court, for the court to exercise jurisdiction, whether it be Morales v. Waco... I can't hear you. I can't hear you, counsel. I'm sorry. You're not in a mic and you're not speaking up, and I don't think any of us can hear you. In virtually every case that's come up, there has always been a case before the court. One of the things that you look at is the existence of a case. In Stump v. Sparkman, the court was very careful to say, yes, there was a case. It may have been informal, but the lady there filed a petition with the court at the direction of her attorney. She filed a petition with the court, and the court had jurisdiction to act on a petition that's filed with it. In this particular case, the court did not have jurisdiction to act on a complaint by a private individual, which is no question. Under state law, the judge has no jurisdiction to enter an order to arrest Mr. Hamilton. And this is the point that the warrant didn't go to the prosecutor in time? I don't understand the point. Well, the point is, Your Honor, You mean so far as why he doesn't have jurisdiction? Yeah, and when? Your argument is I just don't understand the argument. Okay. As to who are we talking now, Overby or Raglin or the prosecutor? We're talking about Judge Raglin, Your Honor. He issued an arrest warrant. He issued an arrest warrant. Do judges typically issue arrest warrants? No, they do not. Who issues arrest warrants? They issue warrants usually once a case has been filed, once a prosecutor has initiated a prosecution. All right. Now, what's the Missouri statute that makes this a wrongful act by the judge? Well, number rule 37 prohibits or, well, it doesn't prohibit. It says that a criminal proceeding will be commenced by the filing of an information. Informations are documents filed by prosecutors. Can't arrest warrants be issued before the filing of a criminal case? If a police officer comes in and says we have probable cause to arrest somebody? Oh, yes. Yes, Your Honor. You don't need a criminal complaint filed, do you? You would have to have a criminal complaint before the case would, he can be arrested and he can be detained for 24 hours. During that time, if there has not been an information filed, they have to let him go. The case is actually commenced with the filing. What about warrantless arrest? Warrantless arrest, the officer has the right to arrest. Yes. But a case is not actually commenced until the information is filed. In this particular case, we contend that you have to approach the prosecutor. He is a constitutional authority in the state of Missouri. What we're talking about is a very important policy for the state of Missouri, and that is- Then why are you in federal court? Well, Your Honor- I don't understand this federal constitutional claim. Well, Your Honor, federal constitutional claim, first of all, our constitutional claim is based on the Equal Protection Clause. Mr. Hamilton was an indigent individual. He was arrested. He could not make bond. He did not have the money- Okay, that doesn't have anything to do with Judge Ratner. Well, yeah, it does, but that's the bond policy. That's not the arrest warrant. Well, Your Honor, I think I'll probably go on to the next point, and that is that the court below said that you couldn't sue the judge for declaratory relief. You couldn't sue the judge for injunctive relief, and you couldn't seek monetary damages. And it also said you can't sue the city because his actions were not that of the city. That kind of leaves Mr. Hamilton without any kind of recourse. As in Stump v. Sparkman, the court said sometimes in applying some of our rules, such as judicial immunity, it results in an unfair or unjust result for an individual. We think that's what happens here. If you accept the arguments by the defendants, there is no recourse for Mr. Hamilton for what happened to him. Another case which- Recourse for what, though? Now we're told that he had the money to bond himself out but chose to do the time instead of and save the money. That is not true, Your Honor. What happened is the defendants claim that he had the ability to borrow from his sister, from his brother, from other people to get himself out. Well, it wouldn't be the first case in which immunity prevented someone from having recourse. That's what immunity doctrines tend to do. It happens. And basically what the court's trying to do is balance the rights to protecting the judges, which is a very important policy, and also making sure that there is recourse for individuals. A more recent case, the Dixon case here in St. Louis that came about after we briefed this case, is a major case. It's based on the same thing. It's based on the equal protection. It's based on substantive and procedural due process, the same claims we asserted. And the court there found that by limiting bonds to monetary payment, the individuals were denied equal protection based on wealth. Our case is even more egregious than that. Not only did they limit it to monetary things, but they required it to be cash only. You couldn't use a bondsman or any other forms of release. Yeah, but I looked at that case, and Judge Fleissig just said that judicial immunity didn't preclude declaratory relief. That's correct. And you've acknowledged here that that claim is moot because the city has changed its approach, as I understand it, or the judge, the new judge, or the judge is retired. I forget exactly, but you've conceded that it's moot. You're just pursuing damages at this point. Your Honor, I think that's the only recourse we have at this point. Right, but I'm saying the Smith case doesn't help you on damages. The district court there didn't say that the judge was subject to damages action, I don't think. King v. Smith or? Dixon, I misspoke. Dixon, I'm sorry. I think in the case also, I believe there was some language in there in which the court found that merely by the fact that they had voluntarily changed their actions, that does not moot out the claim for injunctive or declaratory relief. Now, wait, are you saying it's not moot? You're switching then on our case? Are you saying that affects this case? Your Honor, we have not raised that as an issue. All right, mootness, that's not an issue. Declaratory judgment, all we're talking about is damages. We're talking about damages, Your Honor. In this particular case, the city marshal certainly was a final decision maker so far as the actions of the police department and the policies of the police department. What policy of the police department? Well, the policy of, first of all, he acknowledged that he'd been there for over 20 years, I think maybe 25 years, and that during that time you had a policy and the police department implemented that policy of requiring people to post cash only bonds. You couldn't get out for any other reason. If you didn't come up with the cash, you couldn't get out of jail. No other things were available to you. Why is that a policy of the police department? I thought that was a judicial order. Well, it started out as a judicial decision of the judge, but judges don't implement that. They don't arrest people and take them to jail and book them in. The police have to make the arrest. They have to take them to jail. They have to book them in. They're in the custody of the police department or the city officials, the city police, and they put them in jail. Now, police also- Do they have authority to release the people without the payment of a bond? Sure they do. I mean, a sheriff or a- I thought there was a judicial order saying this person must be held until they pay the bond. Well, it's a judicial order, but I think the marshal or a sheriff, either one, if they believe somebody is being held illegally, they can release them. Now, that may create a dispute between them and the judge, but there's nothing that says that a chief of police has to illegally hold somebody in jail. He's the one that puts them in there. He's the one that's responsible for taking them out. No question, but what the people are being held in jail are being held there on behalf of the city once they are put in the jail, and the police are there holding them. Your Honor, with that, I'd like to reserve what few moments I have left. Thank you. May I please record? Yes, sir. Thank you, Your Honor. I represent the city of Hayti and Judge Ragland and Ms. Overby. Half of my argument will be, or half my time will be reserved for the other co-defendant in this case. You can raise that, by the way. All right, thanks. No, I mean there's a button on the side there, I think, if you want to raise that. The whole thing, yeah. Thank you. The case really, to me, and the way it's been argued, is a damage case for improper bonds that were enforced or assessed against Mr. Hamilton, and he couldn't make his bond, and therefore the city and, of course, Judge Ragland and Ms. Overby were liable for those claims. The city was dismissed on summary judgment. Judge Ragland and Ms. Overby were granted a 12-6 dismissal motion on the basis of absolute immunity based on the complaint that was filed and the allegations in the complaint, and I don't think there's any issues that really arise out of Judge Ragland's authority because the complaint alleged that he had the authority to issue a warrant, that he had the various authorities that Judge White cited in his dismissal order, and that Glenda Overby was acting in her judicial capacity, so I don't really think that the judge's order based on the complaint was erroneous at all. City of Hayti was dismissed on summary judgment because it was not the final policymaker, and this court has recently ruled in Granda and the city of Crestwood, those two decisions that municipal policy is not established in the case of a municipal court or a judicial setting, and frankly there was no evidence in this case whatsoever that the city had anything to do with the bond policy of the city of Hayti. In fact, the only evidence is that the chief of police, who was an elected marshal, and his officers were aware of the judge's bond policy and that they enforced it when someone was arrested because the bond was put on the arrest warrant. The other issue was that there was a newspaper article, the local newspaper, published people who had been arrested in various communities in Pemiscott County, and their fines or whether they were guilty or whatever was published in the newspaper, and that became the basis for the knowledge to the city to acquiesce or otherwise condone whatever Judge Ragland was doing, except that's totally been debunked in Granda and the city of Crestwood. Hamilton pled guilty to peace disturbance? Yes, sir. What was his fine? His fine was time served. He did not have a fine, and so he was released after his time served when he appeared before Judge Ragland. So if he'd been released, where does this $1,000 and $1,222? That was his bond. I know, but there's the assertion that that's the equivalent to the fine he'll pay if he's released. Yes, sir. The bond would have been that. That was the bond which was equivalent to two charges that he had pending against him, peace disturbance and also an assault. He was acquitted of that. He was dismissed. It was dismissed. All right, so what happens to the bond when that was? It was never posted. There was no bond ever posted. No, there wasn't, but this either-or, you spend the time or you spend the money. What if you win, then? It's returned to him, and he acknowledged that in his testimony, even in his deposition. He said, yeah, my bond, I know it'll be given back to me, but I don't want to give the city of Hayti one penny. He refused to get out of jail because he would not post a bond, which he could have or he had friends to. He just said, I'm going to sit there. I do not want to give the city of Hayti one penny because I didn't do anything wrong. And that's part of my argument that there is no constitutional violation under the Fourth, Eighth, or Fourteenth Amendments. I cite two cases out of the Tenth Circuit. Obviously, they're- Does he lose the bond if he's convicted of peace disturbance or- No, sir. Does that depend on whether the judge imposes a fine? If he imposes a fine, then- If the judge just gives him probation, say, with no fine, then he gets the money back. Yes, sir. Okay. He's not paying any fine unless the court imposes the fine, and his bond could either be applied against the fine or it could be less. The concern in the case is whether this policy is requiring indigent people to be detained. In the question of 2011, there may have been an argument. Since all of this Ferguson issue has arose and since the Supreme Court of Missouri and court rules have changed, Hayti has changed all of that. They have gone and they are now conforming themselves to what the Supreme Court has said. You have to go through the steps to determine whether or not the person's able to pay the type of crime being charged, the whole nine yards under the Supreme Court rule that's now in effect. How can the city control that? I thought your whole position here is that's up to the judge. Well, two things. We have the prosecutor and the new city judge and the 34th Judicial Circuit, which he is under, controls that. And, of course, you do have the right to appeal any bond hearing to the higher court, which is implicit in the whole situation. If there's a case that comes up and someone says, hey, they're not following what the Supreme Court's now doing, then we've got another story. And that's what's happened in this Dixon case that has been cited to the court as something that's just happened. That's a preliminary injunction. That's a class action. We don't have a class action here. Mr. Hamilton's out of jail. He is finished. All his case is over with. There's not going to be any future issue unless he gets rearrested and we have another issue. But, in fact, in Dixon, the court summarily rejected Mr. Hamilton's case that was being argued by the judges in that case because it didn't apply because they didn't argue that the language of 1983 applied in that case and that injunctive relief was all they were looking for. And that was not part of Hamilton. So Dixon is not part of the case. Let's forget Dixon. My question is, is the city immune from Equal Protection Clause liability because it can hide behind Judge Ragland's standing order? Yes, sir. It can because of Grounda and basically City of Crestwood. Well, if a trial would establish that the police department and city officials, acting in their official capacity, endorsed, supported, encouraged, enforced, ratified this order, it doesn't seem to me qualified immunity would end that claim. If that was the evidence, but there was no evidence. There was no evidence of any of that in this case. There's absolutely no evidence. The only evidence is the police chief and his officers were aware of the bond policy, not the city council, not the mayor, and that there were newspaper articles. The district court just ruled that the city's not Monell liable because the municipal judge made the decision. Correct. And so you say the summary judgment record will not establish any plausible claim that the city did more than just follow Judge Ragland's order. Correct. And that they did not have any evidence, that Mr. Hamilton didn't have any evidence, that the city endorsed Judge Ragland's bond policy. You've got to have some acquiescence to it or knowledge of it or adoption of that policy for liability for the city. I don't even understand the acquiescence point. I mean, isn't the city marshal required to carry out a judicial order, or is there some argument that he could have released these people notwithstanding Ragland's order? I'm not aware of him having the authority just to release Mr. Hamilton under any authority. If there's an arrest warrant and if they're picking him up on a complaint by a citizen that there has been an assault and the bond has been required, then I think the chief has to follow that warrant and take Mr. Hamilton to Pemscott County Jail for him to be held until he posts his bond. I don't think he can just say goodbye. He can't ignore the warrant or ignore the posting of the bond. That's not his authority. Well, that's what I'm trying to understand. Does he have any authority independent of the judge's order? Unless he believes that the judge's order is totally without any type of jurisdiction, is against the law or anything of that nature that no evidence exists of, then I suspect that the chief should not act under those circumstances. Is there any appearance in this process of getting the bond set? Any appearance before the court? In 2011? Yeah, for an individual? No, sir. They appeared before the judge at the appearance date and that's when the court took up the case. The bond was already set prior to... Who set the bond? The judge. In an order? When the warrant's there, the bond is set at so much money. Who presented the warrant in this case? Who presented the warrant? The clerk? The clerk called the judge and the judge told her to sign the warrant and here's the bond. Who instigated it with the clerk again? Was it the police officer boyfriend who did it? No, it was Leanne Inman who is the next person coming. The daughter of? The daughter of Glenda Overby. She was the person who was at the apartment complex when Mr. Hamilton came in. She called the clerk of court directly? No, sir.  She called for a police officer to come. The boyfriend. Well, he happened to be the one. There are like three officers in the city of Hayti. We're talking about a very small community. She called the police officer who happened to be her boyfriend. And came to the apartments, took a statement from her and a complaint that was ultimately, she went back to the court, signed a formal complaint. Who went to the court? The officer? No. Ms. Inman ultimately signed a formal written complaint against Mr. Hamilton. With this clerk? Yes, she presented it to the clerk, which is her mother. She presented it to her mother? Correct. And the mother called the judge? For the warrant. Correct. I understand, Judge. We're dealing with a lot of relatives in one small community. And it happened. I'm not saying it's the greatest situation. Fortunately, everyone has now retired. And we don't have that issue any longer. But that's the way the matter went down. And where is the bond set out, set forth? There's a bond schedule that the judge has posted in the courtroom or outside the courtroom. And that as well as the clerk has a copy of it. So it is a policy that he adopted and he testified he adopted the policy. So did Ms. Overby and so did the chief, or the marshal actually. So if I'm arrested and I go through this process in 2011 and I say to Ms. Overby, I think that the standard foreign bond amount is way too much for me. I want to talk to the judge. What happens? He could have done that. When he appeared before the judge and said, hey, my bond's too high. When did he appear before the judge? Seven days later. He'd already done his time. Well, he was given time. He could have filed a writ. He had other alternative means in 2011. We've got a whole different system now. But in 2011, he could have gone to a higher court and asked for a bond reduction. Well, that's not really practical, is it? I mean, you have this indigent, or maybe he's got a buddy who put up the bond. Well, he did. Many of him go into the Missouri Court of Appeals. He had plenty of people wanting to post the bond, except he refused to do that. Except could he appear before Judge Raglin and get Judge Raglin to say, yes, my normal schedule applies to you, or it doesn't, and here's why. I guess he could have, but I don't know that he ever made that request. He was going to sit there until his court date is what he testified to in his deposition. Well, how would he even do it? Go to the city marshal and say, I want to see the judge? Make a phone call. To whom? To the clerk. To the mother of the complainant? Because he had phone calls. He made phone calls the next day with his sister and his brother. Thank you, Your Honor. We would ask that you affirm the district court's judgment. Thank you. Mr. Bruce, do you have some time? He has about 30 seconds, Your Honor. I'll give you two minutes. Actually, Mr. Steffens was going to argue for seven and a half minutes. This isn't the total time? No. I don't want individual times. Go ahead. But I want the total time, and if the first lawyer uses up both lawyers' time, they're done. The clerk doesn't. I have this problem with our clerks all the time. If you prefer, I'll sit down, Judge. They want to give everybody their own separate time. Sure. Go ahead. You get your time. May it please the Court, and thank you for allowing me to speak with you. I'll try to keep it short. You only have zero, zero, zero. That's true. That's true. Just to be clear, from my client's point of view, I represent Mrs. Inman, the gal who made the complaint. She did not go and present something to her mother. She called the main office number for the police department. Her mother's duty was to answer, and I know that might seem nuanced, but there's no evidence that she called in a favor to her mom. I thought the mom was the clerk. This is a very small place. She answers the phone at the police department, too. She's a police dispatcher. She answers the phone. She's the judge's clerk. I'm sure she did lots of other things that I don't know about. Her mother, then, does not call David Inman, her boyfriend. We know. We don't need to hear an argument. We don't need to hear the facts repeated that are in the briefs. She was a private actor, right? That's your argument. No question about it. There's no evidence that could in any way make her a participant with 1983 state actor violators. There is none. Okay. Thank you. Mr. Bruce, would you like a minute? Very shortly, Your Honor. One of the things that I heard opposing counsel admit to is that the marshal had adopted the bond policy of Judge Ragland. I think that by itself indicates that it was, in fact, a city policy because he was a final decision maker. On top of that, the policy had gone on for 20 some odd years at least, and the judge never really addressed whether it constituted a custom of the city. When was he asked to regress it? I'm sorry. We're talking about the bond now and not the warrant? The bond policy? Yes. Okay. You just said Judge Ragland never addressed the policy. No, I'm sorry. Judge White did not address the question of whether it constituted a custom or usage. Also, one of the other things about it, it wasn't just applying a bond schedule. If it had been, it would have been something like $160 to have gotten out of jail. What happened is they also have another policy which was adopted, and that is enhancing the bond. There's one, I think it's $160 for peace disturbance. However, they have an unwritten policy of the judge in the police department that if it takes place at a private business, if it's on a Walmart parking lot or something. Where in the record on appeal is this? The bond enhancement? Yeah. It's fully briefed by both sides? No. It's a very factual assertion. Where is it in the record on appeal? I mean, I know you've lived this case for a long time. That's correct, Your Honor. You know everything that you would have proved if you'd gotten a chance to go to prove it. But it isn't in the record on appeal. It's contained in the depositions of Linda Overby. She admitted that. It's contained in the depositions of the city attorney. So what issue are we addressing there? I was just saying that in addition to just a bond schedule, that if it takes place at a business somewhere, they set the bond at the maximum fine. It goes up from, say, $160 up to $500. So if you're an indigent and you can't get out for $160, you're sure not going to get out for $1,022.50 for two offenses. Your Honor, I think my time has run out. Am I right? You want damages for the time served. That's what we're talking about. Yes, Your Honor. That's all the damages we're talking about. Well, no, I think there will be more damages than that. What could there be? That's going to be the basis for the damages. He pled guilty to something he wasn't guilty of? Or what are you asking us to send back to the district court? Your Honor, he pled guilty to get out of jail. He thought that he was. This is going to be 1983 damages? Yes, Your Honor. All right. Thank you, Your Honor. Counsel, the case has been thoroughly briefed and argued, and we'll take it under advisement.